ARBONA, PLAINTIFF, APPELLANT AND APPELLEE, *v.* TORRES, DEFENDANT, APPELLEE AND APPELLANT.

APPEAL from the District Court of Ponce in an Action for the Custody of Natural Children by Virtue of *Patria Potestas.*

No. 1474.—Decided July 27, 1916.

PATRIA POTESTAS — ILLEGITIMATE CHILD — SUPPORT. — Since 1907, when section 222 of the Civil Code was amended, the *patria potestas* over illegitimate children acknowledged by both parents pertains in the first place to the father and, in case of his absence, legal incapacity, or death, to the mother; and this is not changed by the fact that section 190 of the same code provided that the father of the illegitimate child should support the mother and the child.

ID.—FATHER.—The cases in which a father may be deprived of the *patria potestas* are set forth in section 236 of the Civil Code, to which the maxim *expressio unius est exclusio alterius* is applicable.

ID.—NATURAL CHILD—CUSTODY OF NATURAL CHILD—SUPPORT.—When a defendant in an action for the custody of natural children in the exercise of *patria potestas* limits herself in her answer to a prayer for the dismissal of the complaint and makes no allegation therein nor in a cross-complaint that she be adjudged entitled to support, or that support be allowed, and there is no evidence regarding the necessities of the child and the mother or of the expenses of the plaintiff, and answer is only made to a question objected to, in which only the plaintiff's net income consisting of rents and profits is shown, said question of support was not submitted to the court and it lacks jurisdiction to consider the same.

The facts are stated in the opinion.

*Mr. A. F. Castro* for the plaintiff.

*Mr. Francisco Parra* for the defendant.

MR. JUSTICE ALDREY delivered the opinion of the court.

The question to be decided in this appeal is which of the litigants is entitled to exercise the *patria potestas* over their

two acknowledged natural children. It was admitted in the answer to the complaint that in May, 1915, when the action was brought, one of the children was seven and the other three years of age, therefore they must have been born in 1908 and 1912 respectively. The District Court of Ponce adjudged that the former should remain under the *patria potestas* of the mother and that the latter should be placed under that of the father. The custody of another younger child is not claimed by the father on account of its infancy. Both parties appealed from the judgment and, as is natural, attack it on the ground that each is entitled to the custody of the child adjudged to the other.

Section 222 of the Civil Code, as amended in 1907, provides that the *patria potestas* over unemancipated legitimate children shall be exercised in the first place by the father, or in case of his absence, legal incapacity or death, by the mother; that illegitimate children shall be under the *patria potestas* of the father or the mother who may have acknowledged them, and that if they have been acknowledged by both parents, the rule established for legitimate children shall apply.' Based on this statute, the judgment ordered that the younger child should be delivered to the father in the exercise of his *patria potestas*. This was satisfactory to the father but not to the mother, who alleges that the child should remain in her custody because while it is true that the *patria potestas* over the child pertains to the father, its exercise is not absolute and is subordinate to the child's interests; and that inasmuch as the plaintiff did not take the trouble to visit his children after his return from Spain, indicating abandonment and lack of affection, and as the child is only a little over three years of age and needs the care of its mother, she understands that there are reasons why the mother should have the custody of the child.

However the statute is clear. As admitted by the appellant, it grants the *patria potestas* in the first place to the

father if he acknowledged the child, and the reasons alleged by the mother for depriving the father of the *patria potestas* over the child are not included among those prescribed by the statute for that purpose. In discussing this matter in the case of *Le Hardy* v. *Acosta,* 18 P. R. R. 438, we said that the conditions and reservations which limit the *patria potestas* are those specified in our statutes; that section 236 of our Civil Code plainly states the conditions and limitations under which parents may be deprived of the parental authority over their children, or in which the same may be suspended; that to that statute, as to others, the doctrine in the maxim *expressio unius est exclusio alterius* applies, and that these are the only cases in which the courts can take away, for a shorter or longer period, the right of the father to the control and custody of his children. As none of the facts alleged by the mother against the father are included in section 236 of our Civil Code, it is evident that the father is entitled to the custody of the said child and the court committed no error in so holding.

With regard to the child born in 1908, the question is different.

It is acknowledged by the parties and by the court that amended section 222, to which we referred at the beginning of this opinion, is applicable; but it is contended by the mother and sustained by the court as a ground for the judgment leaving the child in the custody of the mother, that as the child was born prior to 1911, when section 190 of the Civil Code was repealed by the substitution of another provision, under said section and according to the holding in *Vargas* v. *Gispert,* 15 P. R. R. 132, the mother acquired a right of which she would be deprived by the application of section 222, and for that reason, in order to protect that right, the provision that the father is entitled to the *patria potestas* over the child should not be applied.

Said section 190 first became a part of our laws with the

adoption of the Revised Civil Code in 1902. It reads as follows:

"The father of the illegitimate child shall support the mother and the child until the latter has arrived at the age of eighteen years, including the expenses of education, and giving the child a profession or trade, in accordance with his social conditions. If after the age of eighteen years, the child cannot work, because of some physical or mental imperfection, his father shall continue to support him. The support shall consist of a monthly pension in cash paid in advance."

In the case of *Vargas* v. *Gispert, supra,* the child under discussion was born before the amendment of section 222 of the Civil Code, which provided that the *patria potestas* should be exercised by the father and mother conjointly, and it was held that as amended in 1907, giving the father preference to the *patria potestas,* the said section could not prejudice the rights acquired by the mother who already had the *patria potestas* over her child when the amendment was enacted; and with regard to the apparent conflict between section 190 and sections 217 and 218 of the same code, the last two prescribing that the obligation to support may be claimed when such support is required and that the person obliged to render support may elect either to pay the amount required or to receive and maintain in his own dwelling the person having a right to such support, it was held that as section 190 is specific and section 218 is general, the specific should be followed to the exclusion of the general, and therefore the child should remain in the custody of its mother. It was held also that if section 218 were applied, the mother would be prevented from giving the child the first and most urgent care with the means granted to it and would not be supported as prescribed by section 190.

The appellant father contends, however, that that case is not applicable because there the mother acquired the *patria potestas* conjointly with the father when her child was born, and, therefore, was entitled to its custody, whereas in the

present case the mother has no right of *patria potestas* until the father's incapacity is shown, and that section 190 cannot have the effect of depriving the father of his *patria potestas* and giving it to the mother after the Legislature has conferred it so expressly upon the former.

We are of the opinion that the father is right, for inasmuch as his eldest child was born after the Legislature had expressly enacted in 1907 that the *patria potestas* pertains to the father and only in certain exceptional cases to the mother, the latter acquired no such right of *patria potestas* as in the case of Gispert, and that although section 190 remained in force in the code, the right granted by it may be claimed only when the father does not elect to exercise his preferred right to the *patria potestas* given him by the amendment of 1907, the case of *Vargas* v. *Gispert* being distinct. If section 190 is specific, still more specific is the amendment of 1907, and as section 236 enumerates the cases in which the right of *patria potestas* may be lost, we fail to understand how a person upon whom it was exclusively conferred can be deprived thereof for a reason not specified by the law. Perhaps section 190 creates a right in the mother to be supported, but we need not decide that question here. The father is entitled to the custody of the child and there is no reason for depriving him of it.

The father also complains of that part of the judgment which holds that the mother and her child are entitled to an allowance for support in proportion to the showing made by the evidence introduced regarding the same, because the question of support was not raised and there was no evidence on that point.

In her answer the defendant only prayed for the dismissal of the complaint, without setting up anything therein, or in a counter-claim, on which to base a pronouncement of her right to support or an allowance therefor. The evidence, in fact, did not refer to the property which the defendant might have, except in one question, which was excepted to,

and the answer thereto which showed only the plaintiff's income derived from rents and the fruits of his labor. There was nothing regarding the needs of the child and the mother nor regarding the plaintiff's expenses.

We understand that that question was not submitted to the court by the pleadings and that as the evidence mentioned was objected to by the plaintiff, the court was without jurisdiction to decide the same.

For the reasons stated the judgment appealed from should be reversed in so far as it denies to the father the custody and *patria potestas* of his son Jaime, who was born in 1908, and holds that the defendant is entitled to support, and confirmed as to the *patria potestas* of the father over his natural daughter Rosa.

*Reversed in part.*

Justices Wolf and del Toro concurred.

Chief Justice Hernández and Justice Hutchison dissented.

---

DISSENTING OPINION OF CHIEF JUSTICE HERNÁNDEZ IN WHICH JUSTICE HUTCHISON CONCURS.

As rightly contended by the defendant in her brief, the present case involves no question as to the one entitled to the *patria potestas* over the two acknowledged natural children of the litigants, for there is no doubt that it belongs to the father. It is simply a question of the conditions of its exercise—*i. e.,* whether notwithstanding the fact that the *patria potestas* over the children pertains to the plaintiff, he has the right that they be surrendered to him by the mother, in whose custody they are. Such is the question of law submitted to this court.

On May 20, 1915, the father filed a verified complaint against the mother in the District Court of Ponce, claiming the custody of their natural children Jaime and Rosa, who, as alleged by the plaintiff and admitted by the defendant,

were aged seven and two and a half years respectively at the time the action was brought, Jaime having been born in 1908 and Rosa in 1912. There is another child named María Magdalena, one and a half years old, whose custody the plaintiff does not claim although he had acknowledged it as well as the other two.

The said children have lived with their mother since they were born, the father having provided for their maintenance and support. The plaintiff had contracted lawful marriage with another woman and one child was born of that union. The defendant is an honest woman and is so regarded by the plaintiff.

The case should be governed by the law in force at the time of the birth of the children Jaime and Rosa. Section 222 of the Revised Civil Code, as amended by the Act of March 14, 1907, was operative when both Jaime and Rosa were born—that is, in 1908 and 1912—and section 190 of the said code was also in force when Jaime was born, but was repealed by Act No. 73 of March 9, 1911, or prior to the birth of Rosa.

Section 222, as amended, and section 190 read as follows:

"Section 222.—The *patria potestas* over the legitimate children not emancipated belongs in the first place to the father, and in case of his absence, legal incapacity or death, to the mother.

"Illegitimate children and adopted minors shall be under the *potestas* of the father or mother acknowledging or adopting them. Where they have been acknowledged or adopted by both parents, the provision of paragraph 1 of this section shall be applicable."

"Section 190.—The father of the illegitimate child shall support the mother and the child until the latter has arrived at the age of eighteen years, including the expenses of education, and giving the child a profession or trade, in accordance with his social conditions. If after the age of eighteen years, the child cannot work, because of some physical or mental imperfection, his father shall continue to support him. The support shall consist of a monthly pension in cash paid in advance."

In amending section 222 of the Revised Civil Code as

above, the result of which was that from the time of such amendment the *patria potestas* ceased to pertain to the father and mother conjointly, as originally provided by said section, the Act of March 14, 1907, neither expressly nor impliedly repealed section 190; therefore while under the said act plaintiff Arbona had the first claim to the *patria potestas* over his son Jaime and the child's mother, Margarita Torres, the second, he was required to support the mother and child until the latter reached the age of eighteen years, by paying a monthly allowance in cash in advance. That right was acquired conjointly by the mother and the child under section 190 of the Civil Code at the time of the birth of the child in 1908.

If that section was compatible with the original provisions of section 222 recognizing the joint right of the father and mother to the *patria potestas,* we see no reason in law why it should not be compatible with section 222 as amended, which recognizes the prior right of the father to the *patria potestas* and that of the mother in case of his absence, legal incapacity, or death. It is not the mother's but the father's *patria potestas* which originates the right created by section 190. Its application has not the effect of depriving the father of the *patria potestas* and conferring it upon the mother. On the contrary, it affirms and ratifies it in the father as it formerly did when the *patria potestas* was conferred upon the father and mother conjointly. Section 190 regulates the exercise of the right of parental authority by the father in relation to the support of his illegitimate children, but does not extinguish or suspend the right of the father to the *patria potestas.* Sections 235 and 236 of the Civil Code refer to the deprivation or suspension of the right of *patria potestas* and therefore are not applicable to the present case, which, as to the child Jaime, should be governed by the doctrine laid down and applied by this court in the case of *Vargas* v. *Gispert,* 15 P. R. R. 132.

It is true that the Act of March 9, 1911, repealed section

190 of the Civil Code, but according to section 3 of the same code, providing that laws shall not have a retroactive effect unless they expressly so state, and that in no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action, the said act is not retroactive. The Act of March 9, 1911, contains no retroactive provision, and, moreover, defendant Margarita Torres and her son Jaime had acquired a right under section 190 of which they could not be deprived.

The judgment appealed from is in accordance with law in so far as it affects the child Jaime.

As to the child Rosa, when she was born in 1912 section 190 of the Civil Code, which we have held to be applicable to the case of the boy Jaime, had been repealed by the Act of March 9, 1911, but as by virtue of the said act section 190 was substituted by article 134 of the Spanish Civil Code, which provides that a natural child has a right to bear the surname of the person acknowledging it, to receive support from the same, and to receive the lawful hereditary portion, without prescribing the manner in which the support shall be received, we are of the opinion that the court, in the exercise of its discretional power, should ascertain and determine whether in a case like the present the father should be given the custody of the child so that he may comply with the parental duties imposed upon him by the *patria potestas,* or whether the mother should be allowed to retain it for that purpose.

We should take into account that in determining the effects of the *patria potestas* regarding the persons of the children, section 223 of the Civil Code apparently refers to a normal condition in which the husband and wife live together with their children, whether legitimate or natural, under the same roof. The said section reads as follows:

"Section 223.—The father and the mother have, with respect to their children not emancipated:

"1. The duty of supporting them, keeping them in their com-

pany, educating and instructing them in accordance with their means, and representing them in the exercise of all actions which may redound to the benefit of such children.

"2. The power to correct and punish them moderately."

The Act of March 14, 1907, amended section 222 of the Revised Civil Code and revived article 154 of the Spanish Civil Code, which gives the *patria potestas* to the father and, in his absence, to the mother; but section 223 continued in force as originally enacted, conferring rights upon both the father and the mother with regard to their unemancipated children, without any reservation that the mother should exercise such rights *in the absence* of the father, as prescribed by article 155 of the Spanish Civil Code, which is the same as section 223 of the Revised Code.

In case of a suit for divorce interrupting the marriage relations, section 166 of the Revised Civil Code provides that if there are children of the marriage whose provisional custody is claimed by both parties to the marriage, they shall be placed under the custody of the wife during the time the suit is pending, unless there be strong reasons in the discretion of the court for depriving the wife of the custody of her children, either wholly or in part; and in case of a decree of divorce, section 175 directs that the minor children shall be placed under the *patria potestas* of the party who has obtained the decree, the other spouse having the right to continue family relations with his or her children.

The Legislature has made no express provision for cases of dissolved illicit relations between a man and a woman during which natural children were born, and it seems to us to be contrary to common reason and equity that the mother of a natural child should be denied all rights during the life of the father who acknowledged the offspring of such relations, and that the father who without cause deserts the woman who has borne him children should be allowed privileges which are denied to a man who begets children in lawful wedlock and abandons his lawful wife. Such a theory

would lead to the absurd conclusion that a father, more un-
natural than natural, has the right to tear his acknowledged
child from the arms of its mother during the first days of
its existence when it still requires nursing.

Nor does the preference of the father over the mother
in the exercise of the *patria potestas* prescribed by section
222 of the Revised Civil Code, as amended by the Act of
March 14, 1907, alone support the claim of the plaintiff to
be given the custody of his child Rosa. In commenting on
article 154 of the Spanish Civil Code, which is similar to sec-
tion 222 of our code, Scaevola expresses himself as follows:

"Like the codes of most other countries, the Spanish code gives
the father preference over the mother in the exercise of the *patria
potestas*. But the mother is placed on an equality with the father
in the exercise of some rights and in the performance of certain
duties inherent in the *patria potestas*. The support of the children;
their custody; their correction and punishment at home; the right
to earnings, are powers common to both the father and the mother.
The preference given to the father is manifested in his right to repre-
sent his children legally. What the statute means to say is that the
father assumes the entire juridical capacity which he does not share
with the mother. This is the faculty which the mother may exercise
only in case of the incapacity of the father—that is, by reason of his
death, absence, or for any of the reasons included in sections 169,
170 and 171."

And further on, in commenting on article 155 of the
Spanish Civil Code, which is similar to section 223 of our
Revised Code, Scaevola says:

"In specifying the rights and duties of the parents regarding the
persons of their children, article 155 of the code bestows and imposes
them upon the father and, in his absence, upon the mother. But a
close scrutiny will reveal that not always does such preference or
precedence exist in connection with some of the effects of the *patria
potestas*. The duty of supporting the children is imposed on the con-
jugal partnership, pursuant to subdivision 5 of article 1408. The
children must remain in the custody of both and not of one of the
parents, for article 155 prescribes that the spouses shall live together.

There is no doubt that the mother also has the power to correct and punish the children moderately. True, the father takes precedence in all that affects the legal representation of the children; in the correction defined by article 156 and in the management of the estate—that is, in that which does not relate to the instruction of the family.''

It is not possible to lay down as an absolute and inflexible principle that a natural child must live with the father who acknowledged it and exercises the right of *patria potestas* over it. The conditions of the exercise of that right should be regulated by the courts in accordance with the special circumstances of each case, always bearing in mind that the *patria potestas* under our present law is not for the benefit of the father or the mother, but for that of the child which requires it.

When the plaintiff sued for the custody of the child Rosa, it was only two and a half years of age, and, as is natural for a child of such tender years, still required the loving care and watchful solicitude of the mother who gave it birth. The child had always lived with its mother who naturally has more affection for it than the father. The father acknowledges the present morality of the mother. The lawful marriage of the father, already resulting in the birth of a child, must create difficulties of a moral character in the continuation of the relations of mother and daughter. In view of these special circumstances, the plaintiff should be denied the right to separate the child from its mother, in whose custody and under whose protection it should continue, without prejudice to a modification of that decision when warranted on reasonable grounds. The right of the father to the *patria potestas* would not be divested thereby in any essential particular.

The judgment appealed from should be affirmed as to the boy Jaime and reversed as to the girl Rosa, dismissing the complaint in all its parts.